IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 18-cv-03078-DDD

RAMON ANGEL MARQUEZ,

    Plaintiff,

v.

ANDREW M. SAUL, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE AND REMANDING FOR FURTHER PROCEEDINGS

Plaintiff Ramon Marquez suffered traumatic brain injury in a motorcycle accident. He applied for, but was denied, social security benefits by the Commissioner, and an administrative law judge ruled that, while Mr. Marquez would be unable to perform past relevant work, he was capable of light work and therefore "not disabled" within the meaning of Title II of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.* This matter is before the Court on review of the Commissioner's decision denying Mr. Marquez's application for disability insurance benefits and supplemental security income, together with the entire administrative record and the briefing of the parties. (Docs. 11, 15, 16.) For the reasons

---

[1]     On June 4, 2019, Congress confirmed Andrew M. Saul as the Commissioner of the Social Security Administration ("SSA"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

stated below, the Commissioner's decision is **VACATED**, and the case is **REMANDED** for further fact finding.

## LEGAL STANDARDS

### A. Entitlement to Disability Insurance Benefits

To obtain disability insurance benefits under the Act, a claimant must meet the insured status requirements, be younger than 65 years of age, file an application for a period of disability, and have a "disability" within the meaning of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The disability must also have begun before expiration of the disability-insured status. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983). Relevant here, a person has a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). To qualify for benefits, the disabling impairment must last—or be expected to last—at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Evaluating the existence of a disability is a five-step, sequential process that ends at any point at which the claimant is found not disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

***First***, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §

404.1520(b). **Second**, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). **Third**, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. *Id.* at § 404.1520(e). **Fourth**, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). **Fifth**, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

According to the "treating physician rule," the Social Security Administration ("SSA") Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. § 404.1527(d)(2). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To make this determination, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the

record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (quotations omitted); *see also* 20 C.F.R. § 404.1527(d)(2) (noting that although the SSA will consider evidence from treating medical sources, the final responsibility in deciding these issues remains with the Commissioner). Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference" and must be weighed using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). Finally, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotations omitted).

Finally, the ALJ's responsibility to explain his decision concerning the evidence extends to any evaluation of a claimant's credibility:

> According to Social Security Ruling 96–7p, 1996 WL 374186 (July 2, 1996), which governs an ALJ's evaluation of a claimant's description of symptoms, the evaluation must contain specific reasons for a credibility finding; the

> ALJ may not simply recite the factors that are described in the regulations. It is well-established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Hardman v. Barnhart*, 362 F.3d 676, 678–79 (10th Cir. 2004) (internal quotations omitted).

### B. Standard of Review by a District Court

Reviewing disability insurance benefits denials, district courts decide whether "substantial evidence" supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). And courts may not substitute their judgment for that of the agency. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

## BACKGROUND

On July 14, 2015, forty-year-old Ramon Marquez was involved in a motorcycle accident. (R. 26, 36.) He was not wearing a helmet and

suffered a severe head injury. (R. 680.) He was in a coma for three weeks, underwent two craniotomy procedures, and was hospitalized until late August at St. Anthony's Hospital. (R. 21–22, 307–647.) He was admitted to Craig Hospital for inpatient rehabilitation, where he stayed until the end of October. (R. 675–85). He then underwent outpatient physical therapy, occupational therapy, speech therapy, and psychological treatment. (R. 664, 666, 669, 779.)

In November 2015, Mr. Marquez filed an application for SSA benefits, alleging disability beginning on July 14, 2015, due to a traumatic brain injury and seizures that he alleges he suffered as a result of the motorcycle accident. (R. 17, 159, 187.) On November 8, 2017, an Administrative Law Judge ("ALJ") held a hearing on the claim. (R. 33–52.) In a decision dated February 23, 2018, the ALJ denied the claim. (R. 1727.)

Using the five-step framework outlined above, the ALJ found at step one that Mr. Marquez had not engaged in substantial gainful activity since July 14, 2015, the alleged onset date. (R. 19.) At step two, the ALJ found that he had the following severe impairments: "mild neurocognitive disorder with behavioral disturbances and seizures, status post-traumatic brain injury in motorcycle accident." (R. 19.) At step three, the ALJ found that he did not have an impairment or combination of impairments equivalent to any of those listed. (R. at 20.) Before proceeding to step four, the ALJ assessed Mr. Marquez's residual functional capacity ("RFC"), finding that he could perform light work with certain restrictions, but he was "limited to simple, routine and repetitive tasks; no more than occasional interaction with supervisors and coworkers; and, no more than incidental interaction with the public." (R. 20.)

At step four, the ALJ determined that Mr. Marquez was unable to perform his past relevant work as a computer support technician. (R.

26.) At step five, the ALJ found, with the assistance of a vocational expert, that there are other jobs existing in the economy that he could perform. (R. 26–27.) These included representative light unskilled jobs such as merchandise marker, housekeeping cleaner, and street cleaner. (R. 27.) Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 14, 2015, through the date of this decision." (*Id.*) The Appeals Council declined Mr. Marquez's request for review. (R. 1–8.) The ALJ's decision is therefore final for purposes of judicial review.

## ANALYSIS

Mr. Marquez argues that the ALJ committed legal error by according improper weight to the medical opinions, including those of his treating physicians. He further asserts that the RFC determination is not supported by substantial evidence, and that the ALJ erred at step three in failing to consider Listing 11.02 for Epilepsy. He requests that the court reverse the ALJ and find him entitled to disability benefits or, alternatively, remand the case to the Commissioner for further proceedings. He also requests an award of attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

### A. The Weighing of Medical Opinions and the RFC Assessment

The ALJ noted that Mr. Mares complained of disabling symptoms and significant functional limitations, including cognitive difficulties particularly regarding memory. (R. 21.) The ALJ found, however, that Plaintiff had "experienced significant improvement in both physical and mental functioning such that within 12 months of his injury he has regained a capacity to engage in work-related activities." (R. 22.) The ALJ gave "great weight" to the consultative opinion of William Morton,

Psy.D., which he reasoned "generally comports with the opinion of the State agency's psychological consultant" regarding Mr. Marquez's mental impairments. (R. 23–25.) He gave "greater weight" to Dr. Morton's opinion than to a neuropsychological evaluation conducted by Joy DeJong Lago, Ph.D. (R. 24.) He also gave "less weight" to an assessment by Russell Thye, Ph.D. (R. 24–25.) As to Mr. Marquez's physical impairments, the ALJ apparently adopted the findings of Kerry Kamer, D.O., though he did not state what specific weight he gave to that opinion. (R. 23.)

Plaintiff argues that the ALJ's RFC determination ignored substantial evidence—the opinions of four physicians—and instead relied on the least favorable consultative examiner, Dr. Morton, to justify his findings. The Court agrees, and this error alone enough to required reversal and remand. "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (internal citation omitted).

### 1. Dr. Lago

The Court first addresses the neuropsychological evaluation by Dr. Lago dated January 13, 2017. (R. 1116–17.) Dr. Lago found "most notable" the impairment that Mr. Marquez "demonstrated on measures of new learning and memory," which "suggests that Mr. Marquez will have a very difficult time learning and retaining new information and will need to rely on compensatory strategies in this regard." (R. 1116.) Dr. Lago also found other impairments in executive functioning and opined that mood symptoms are a "salient concern." (R. 1116.) She concluded that "in light of the significant cognitive impairment and mood/personality changes, Mr. Marquez is not able to obtain and/or

maintain competitive employment." Dr. Lago, in support of her opinion, stated:

> Specifically, the memory difficulties would make it difficult for him to learn a new job, and his executive dysfunction would hinder his ability to do the type of job that he did previously, and he would have difficulty with independent problem-solving. Additionally, his interpersonal difficulties would pose a challenge in the workplace.

(R. 1117.)

The ALJ accorded greater weight to Dr. Morton's opinion than Dr. Lago's. (R. 24.) But the ALJ did not state what weight, if any, that he assigned to Dr. Lago's opinion. This was error. An ALJ is required to make clear what weight he is assigning each medical opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The regulations also require an ALJ to consider several specific factors in weighing a physician's opinion. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ did not reference these factors or state that he considered them with respect to Dr. Lago. The ALJ also did not give good reasons for his decision to give lesser weight to Dr. Lago's opinion. *See Crampton v. Comm'r, SSA*, No. 18-5078, 2019 WL 3034795, at *4 (10th Cir. July 11, 2019) ("The ALJ need not explicitly discuss all six factors if he otherwise provides good reasons for the weight given to the [physician's] opinion.").

The ALJ's assessment betrays his lack of analysis. He first found that "Dr. Lago did not offer any specific functional restrictions to support this conclusory opinion, which seems to be based more on the claimant's subjectively described limitations than available objective findings and treatment." (R. 24.) But the opinion is not conclusory. It sets forth impairments based on testing and an evaluation. (R. 1116–17.) Dr. Lago made "specific medical findings that could not be rejected in the absence

- 9 -

of conflicting evidence." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). She set forth "Impressions and Recommendations" from a neuropsychological evaluation and testing, and there is no indication that they were based on Mr. Marquez's subjectively described limitations. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (An ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the report was based only on claimant's subjective complaints."). But even so, "[t]he practice of psychology is dependent, at least in part, on a patient's subjective complaints." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005). And a "psychological opinion need not be based solely on objective 'tests', those findings 'may rest either on observed signs and symptoms or on objective tests.'" *Id.* (citation omitted). The ALJ's decision to reject or give less weight to Dr. Lago because she considered Mr. Marquez's responses impermissibly "put the ALJ in the position of judging a medical professional on the assessment of medical data." *Id.* at 759–60.

The ALJ also stated that "Dr. Morton provided a much better supported and explained opinion" than Dr. Lago. (R. 24.) Dr. Lago's opinion may be shorter in length than Dr. Morton's, but both stated the results of their testing and assessment in a comprehensive manner. An ALJ may not summarily reject a physician's "reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed." *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985). And to the extent the ALJ believed that Dr. Lago's report was incomplete or not properly supported, he should have contacted Dr. Lago or taken other steps to obtain the necessary evidence. *See* 20 C.F.R. § 404.1520b.

### 2. Dr. Thye

Dr. Thye's assessment of August 28, 2017, which details even more significant impairments, is consistent with Dr. Lago's opinion. (R. 1132–39.) The ALJ purported to give "less weight" to Dr. Thye's opinion (R. 25), but it's not apparent that he gave it any weight at all or, if he did, which portions of the opinion he gave weight to.[2]

Dr. Thye found that Mr. Marquez was in the borderline range of intellectual functioning and diagnosed him with "Major neurocognitive disorder due to TBI (provisional)," "Adjustment disorder with post-trauma anxiety," and "Major depressive disorder, recurrent, moderate." (R. 1135.) Dr. Thye opined that Mr. Marquez had a number of marked impairments due to processing, memory, and intellectual functioning issues which impacted his ability (1) "to accept instruction and constructive criticism and respond appropriately to co-workers and the public in a working setting," (2) "to sustain acceptable attendance and work without interruptions resulting from his psychological impairments," (3) to adapt to new situations, (4) to follow short, simple instructions or directions, and (5) to manage his own funds. (R. 1135, 1137–38.) To him, Mr. Marquez was extremely impaired in his ability to understand, remember, and carry out more detailed and complex instructions, and his "ability to work would be limited to simple and repetitive tasks." (R. 1135.) Dr. Thye offered that Mr. Marquez "appears to need better social skills and ability to manage anxiety and anger," and that it's common for those with traumatic brain injury to struggle with impulse control. (R. 1138.)

The reasons the ALJ gave to discount these conclusions were erroneous. For example, the ALJ noted that Mr. Sanchez walks to the

---

[2] The ALJ also erred by failing to state that he considered factors relevant to weighing this opinion. *See Watkins*, 350 F.3d at 1301.

- 11 -

library daily, works out, and plays disc golf—hobbies he surmised did "not seem consistent with a disabling level of functional impairment." (R. 25.) By this estimation, the ALJ impermissibly imposed his lay judgment that this physical activity undermined the significant cognitive limitations imposed by Dr. Thye. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2004) ("An ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." (emphasis in original)). The ALJ's non-medical observation "is hardly obvious, and certainly not one that the ALJ (or this court, for that matter) is qualified to make." *Romo v. Colvin*, 83 F. Supp. 3d 1116, 1121 (D. Colo. 2015). Finally, the ALJ stated that he gave Dr. Thye's opinion little weight because it occurred in the same month as Dr. Kamer's physical exam, and "the claimant was observed by Dr. Kamer to have normal cognition and mental status findings" and "to be a vague and self-limiting historian." (R. 25.) But that conclusion cannot be informed by Dr. Kamer's report, in which "Psychiatric diagnoses/history/complaints are not incorporated." (R. 1156.)

### 3. Drs. Hager and Makley

The Court now turns to treating physicians Dr. Barbara Hager, a neurologist, and Dr. Michael Makley, an attending physician at Craig Hospital. According to Mr. Marquez, the ALJ erred by not assigning any weight to their findings, even though they both found that Plaintiff was facing permanent cognitive difficulties.

Dr. Hager's records provide support for the findings of Drs. Thye and Lago. Dr. Hager found, in an evaluation on June 16, 2016, that Plaintiff was disinhibited and had mood irritations, headaches, memory

loss with short term memory problems, seizures, and dizziness. (R. 1183.) She stated that, given the severity of the injury, she suspected Mr. Marquez will continue to have lingering deficits. (*Id.*; *see also* R. 1189 (finding Mr. Marquez was "disinhibited, tangential" and "[f]requently cursing"; he had poor "short term memory, repeats stories he had told in the past"; and he should not to drive due to "his impulsivity, his head injury, and vision change"); R. 1191–93 (finding that he was more disinhibited; he reported visitations from Jesus; he repeated phrases during visits; and diagnosing mood disorder as a late effect of traumatic brain injury).) These are medical findings that should have been considered by the ALJ, as they corroborate Mr. Marquez's complaints of significant impairment in memory and other mental deficits. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[T]he regulations require the ALJ to 'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled,' . . . and this court requires the ALJ to discuss 'the significantly probative evidence he rejects.'") (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (internal citations omitted)).

Dr. Makley, an attending physician at Craig Hospital, opined in November 2015 that Mr. Marquez's traumatic brain injury "resulted in myriad disabilities that would prevent him from being able to work in any capacity at this time." (R. 661.) He stated that Mr. Marquez "is permanently disabled and not competent to manage his own affairs, medically and financially." (*Id.*) The ALJ briefly considered, but rejected, Dr. Makley's opinion because it "did not provide any specific functional restrictions or offer objective support for these conclusory opinions" and "seem[ed] to ignore the claimant's improvement." (R. 25.) These reasons may be enough to not giving Dr. Makley's opinion controlling weight, but the ALJ was still required to consider the opinion for the purpose of

evaluating its consistency against that of the other medical providers. *Westbrook v. Massanari*, 26 F. App'x 897, 900 (10th Cir. 2002); *see also Carpenter*, 537 F.3d at 1269 (finding the ALJ erred by not "discuss[ing] how he resolved the conflicts between his findings and the evidence").

### 4. Dr. Morton

Finally, the ALJ erred with respect to Dr. Morton, to whom he gave great weight, by failing to acknowledge Dr. Morton's moderate-impairment conclusions in the RFC. An ALJ may not pick and choose from a medical opinion, using only those parts favorable to a finding of disability. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Dr. Morton opined, consistent with Dr. Lago, that Plaintiff was in the borderline intellectual range of cognitive disabilities. He noted moderate restrictions in interacting with supervisors, co-workers and the public, which the ALJ addressed. But Dr. Morton also opined that Mr. Marquez was limited in remembering and understanding instructions, procedures, and locations. (R. 1105.) The ALJ did not include these limitations in the RFC or the hypothetical question to the vocational expert ("VE"), even though the ALJ stated that Dr. Morton's limitations "appear to be supported by the evidence on which they are based." (R. 24.) This error also requires a remand. *See, e.g.*, *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014).

In sum, the ALJ's failure to weigh the medical evidence and opinions of the medical providers means that the RFC is not supported by substantial evidence. The work-related limitations that the ALJ did not properly consider or weigh "would, if accepted, impact the determination of RFC." *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011). Accordingly, the errors require reversal and a remand.

## B. The Step Three Analysis Regarding Listing 11.02 for Epilepsy

Mr. Marquez also asserts that, while the ALJ found that Plaintiff suffered from seizures as a severe impairment at step two, he inexplicably did not analyze at step three whether those seizures met the requirements of Listing 11.02 for Epilepsy. Mr. Marquez's medical records detail recurring seizures since the time of his accident, and he has been treated and evaluated by numerous providers for this condition. He routinely saw Dr. Hager in the two years following his accident to deal with the seizure disorder. (*See* Ex. No. 19F, R. 1158–1214.) Mr. Marquez also reports periods of time where his seizures have occurred weekly causing loss of consciousness and body control, as well as postictal confusion and fatigue. (*Id.*; *see also* R. 218.) According to him, he meets Listing 11.02 because his records and statements clearly show that he was experiencing seizures at least once a month for at least three consecutive months. Defendant disagrees, asserting that the evidence does not support this.

Since the ALJ assessed a neurocognitive disorder with seizures at step two (R. 19), and the record shows that Plaintiff was diagnosed with epilepsy and seizures (R. 1162, 1173, 1183), the ALJ should have analyzed Listing 11.02 to determine if Plaintiff's impairment met or equaled this listing. *See Burnett v. Comm'r of Social Security*, 220 F.3d 112, 120 n. 2 (10th Cir. 2000 (It "is within the realm of the ALJ's expertise to determine the closest applicable listed impairment based on the medical evidence, when examining whether a claimant's impairments meet or equal a listed impairment."). The ALJ was required to discuss the relevant evidence and explain why he found that Plaintiff was not disabled at step three. *Clifton*, 79 F.3d at 1009.

The Court does not, at this point, determine if the evidence supports a finding of equivalence under this listing; the ALJ should have

considered the issue. Because the case is being remanded for other errors, the ALJ is instructed to also consider whether Plaintiff's impairments meet or are equivalent to Listing 11.02.

### C. Request for Attorneys' Fees

Plaintiff's request for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), is denied without prejudice. The Local Rules of this Court require that all motions be filed in a separate document. D.C.COLO.LCivR 7.1(d). Further, Plaintiff has not stated the amount of fees requested or provided a "recitation of legal authority" in support of his request. *Id*.

## CONCLUSION

Based upon the foregoing, the ALJ's decision is hereby **VACATED**. The case is **REMANDED** for the ALJ to properly weigh the medical evidence, determine the RFC, and assess Plaintiff's seizures at step three.

DATED: October 2, 2019.   BY THE COURT:

_____
Daniel D. Domenico
United States District Judge